## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JOAN CRAVENS, INC.**
**and JASON V. SMITH**                                                                      **PLAINTIFFS**

**V.**                                             **CIVIL ACTION NO. 1:15-CV-385-KS-MTP**

**DEAS CONSTRUCTION INC., D/B/A**
**DEAS MILLWORK CO., and**
**WEATHER SHIELD MANUFACTURING, INC.**                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [183] filed by
Defendant Deas Construction, Inc. ("Deas"), the Motion for Summary Judgment [189] filed by
Defendant Weather Shield Manufacturing, Inc. ("Weather Shield"), the Motion to Exclude Darius
Grimes Pursuant to Daubert ("Motion to Exclude Grimes") [186] filed by Weather Shield and joined
by Deas, and the *Daubert* Motion and Motion *in Limine* to Exclude, or in the Alternative Limit, the
Expert Testimony of Patricia J. Fritche ("Motion to Exclude Fritche") [192], *Daubert* Motion and
Motion *in Limine* to Exclude, or in the Alternative Limit, the Expert Testimony of Lee R. Connell
("Motion to Exclude Connell") [194], and *Daubert* Motion and Motion *in Limine* to Exclude, or in
the Alternative Limit, the Expert Testimony of William D. Smith ("Motion to Exclude Smith") [196]
filed by Plaintiffs Joan Cravens, Inc. and Jason V. Smith.  After considering the submissions of the
parties, the record, and the applicable law, the Court finds the following:

1.      Deas' Motion for Summary Judgment [183] should be granted in part and denied in
        part;

2.      Weather Shield's Motion for Summary Judgment [189] should be granted in part and
        denied in part;

3.      the Motion to Exclude Grimes [186] is not well taken and should be denied;

4.      the Motion to Exclude Fritche [192] is well taken and should be granted;

5.      the Motion to Exclude Connell [194] is not well taken and should be denied;

6.      the Motion to Exclude Smith [196] should be denied in part and deferred in part until a *Daubert* hearing can be held.

## I. BACKGROUND

On November 11, 2015, Plaintiffs Joan Cravens, Inc. ("JCI") and Jason V. Smith (collectively "Plaintiffs") filed this action against Defendants Deas and Weather Shield (collectively "Defendants"), bringing the following claims:  (i) breach of contract, (ii) breach of good faith and fair dealing, (iii) fraudulent misrepresentation, (iv) fraudulent inducement, (v) negligent misrepresentation, (vi) breach of implied warranty of merchantability, (vii) breach of implied warranty of fitness for a particular purpose, and (viii) violation of the Lanham Act.  Many of the facts in the case are disputed, but the following is a brief account of the factual history of the case as it relates to the motions at bar.

This matter arises out of the purchase of windows for the construction of a home located in Gulfport, Mississippi.  Smith contracted with JCI to build this home, intending for it to be a "fortified" home in order to qualify for certain insurance programs.  In June 2011, Smith hired George Denmark ("Denmark") to design the home, and plans were issued in July 2013.  Plaintiffs planned to order impact-rated Kolbe Ultra Series windows for the construction project, and Kolbe submitted a quote in October 2013.

Weather Shield is a window manufacturer, and Deas is a dealer for Weather Shield.  Deas was allowed to place a bid for the project after providing a sample of their Premium series window for evaluation by Plaintiffs and Denmark.  The sample consisted of a corner piece of window and

showed the quality and materials of the framing.  However, it is undisputed that, at the time, Weather Shield did not manufacture impact-rated Premium windows.  Whether or not Plaintiffs related that the windows had to be impact-rated is disputed.

The procurement process for the windows involved multiple quotes submitted to Plaintiffs by Deas.  The first quotes submitted to Plaintiffs were for Premium windows.  However, as Deas realized that impact-rated windows were required, it at some point began quoting Lifeguard series windows instead, as they were the only impact-rated windows Weather Shield made at the time.  The final accepted quote, Quote 1460342, listed Lifeguard and Weather Shield windows, not Premium.

Plaintiffs noticed problems with the windows as they were being installed, with an entire sash of one window falling out during the installation process.  After attempts to contact Defendants to remedy the problems with the windows, Plaintiffs filed suit in this Court.

## II. DEAS' MOTION FOR SUMMARY JUDGMENT [183]

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a

reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## B.     Breach of Contract

Deas contends that Quote 1460342 represents the whole of the contract between it and Plaintiffs, and because it provided exactly what was contracted for in Quote 1460342, Plaintiffs' breach of contract claim must fail. Plaintiffs argue that this quote is merely evidence of the contract between them, not the entirety of the contract itself. An unwritten, but understood, term, they argue, was that the windows had to be impact-rated, which not all of the windows provided were. Whichever view is correct, there can be no doubt that Quote 1460342 is at least written terms of the contract between the two, specifying the quantity, price, and technical specifications of the provided

windows.  As such, the Court must consider whether the parol evidence rule applies to exclude all evidence of unwritten terms of the contract.

Deas argues that all evidence of oral terms is inadmissible because the parol evidence rule excludes any evidence "which contradicts, varies, alters, adds to, or detracts from the written agreement."  *See Turner v. Terry*, 799 So.2d 25, 32 (Miss. 2001).  However, though this is a "bedrock rule," it "is subject to many exceptions and is said to be very flexible."  *Id.* (quoting *Byrd v. Rees*, 171 So.2d. 864, 867 (Miss. 1965)).  One of these exceptions is fraud.  *Bedford v. Kravis*, 622 So.2d 291, 295 (Miss. 1993).  "If . . . fraud is properly pled, prior oral representations or negotiations are admissible to prove the real intent of the contracting parties."  *Id.* (citing *Holliman v. Cherry & Assocs.*, 569 So.2d 1139, 1146 (Miss. 1990)).  Because the Court finds that Plaintiffs' claims of fraudulent misrepresentation and fraudulent inducement against Deas survive summary judgment, *see infra* Part II.E, parol evidence will be allowed to prove intent.  *See id.*

Plaintiffs maintain that it was their intent to purchase windows which were impact-rated, and that Deas knew of this requirement from the beginning of the project.  Deas claims to have only learned of this requirement in May 2014.  Regardless, before the contract was finalized and the windows ordered, there is evidence that all parties to the contract knew that the intent of the contract was to purchase impact-rated windows.  "[W]here parties contract for a particular result, and intend to effect it, and fail to accomplish it . . . , equity will effectuate the intent of the parties."  *Bedford*, 622 So.2d at 295-96 (quoting *Hall v. State to Use of Lafayette Cnty.*, 13 So. 38, 29 (Miss. 1891)) (alteration in the original).  Because there is evidence of this intent and that Deas breached this understanding by providing non-impact-rated windows, the Court will **deny** Deas' Motion for Summary Judgment [183] as to this claim.

### C.    Breach of Good Faith and Fair Dealing

Deas' arguments that Plaintiffs' breach of good faith and fair dealing claim fail, are premised on Quote 1460342 being the entirety of the contract between them.  As the Court finds that the agreement between parties could include the oral representations and negotiations through the fraud exception of the parol evidence rule, Deas' motion will be **denied** as to this claim as well.

### D.    Fraudulent Misrepresentation and Fraudulent Inducement

Plaintiffs' claim of fraudulent misrepresentation requires them to show the following elements by clear and convincing evidence:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94, 100 (Miss. 2008).  A claim of fraudulent inducement is simply a fraudulent misrepresentation made to induce an innocent party to enter into a contract, and the same elements must be shown.  *See Lacy v. Morrison*, 906 So.2d 126, 129 (Miss. 2004).  Deas argues that Plaintiffs cannot establish a material misrepresentation, Deas' intent or knowledge of its falsity, or their right to rely on its truth.

### 1.    Material Misrepresentations

At the very least, Plaintiffs have introduced evidence that Deas misrepresented that it could provide Premium windows that were impact-rated.[1]  Denmark testified that, before being allowed to submit a bid for the project, Deas submitted a sample of a Premium window and represented that they could be done with impact glass and with a DP rating of 55.  (*See* Denmark Depo. [216-10] at

---

[1]There are other representations that Plaintiffs contend were made by Defendants.  However, because the Court finds that this representation is enough to support a claim for fraudulent misrepresentation and fraudulent inducement, the Court's analysis will focus solely on it.

pp. 73-77.)  It is undisputed, though, that at the time, Weather Shield did not manufacture impact-rated Premium windows.  Therefore, there is no question as to whether this representation, if made, was false.  There is also no doubt that Plaintiffs have adduced evidence that this representation was material, as they claim this was a prerequisite for accepting bids on the windows.  (*See* Denmark Depo. [216-10] at pp. 73-77.)  As such, Plaintiffs have established that there is a question of fact as to this issue.

### 2.   Deas' Knowledge

At no time does Deas ever claim to have not known that Weather Shield did not manufacture an impact-rated Premium window.  Furthermore, Deas' own agent testified that he switched to Lifeguard windows because those were the only impact-rated windows Weather Shield manufactured.  (*See* Roberts Depo. [145] at p. 145:13-17.)  Therefore, there is at least a dispute of fact as to this element.

### 3.   Deas' Intent

There is evidence that, to bid on the project, Deas had to be able to provide impact-rated windows.  (*See* Denmark Depo. [216-10] at pp. 73-77.)  Denmark testified that Deas knew of this requirement and assured him that it could meet it with the Premium sample provided, despite knowing that these windows could not be made as impact-rated windows.  (*See id.*)  According to Denmark's testimony, Deas would not have been able to bid on the project, let alone win the contract, without making this representation.  (*Id.*)  Plaintiffs have therefore adduced enough evidence to show a genuine dispute of fact as to whether Deas intentionally misrepresented this fact.

### 4.   Right to Rely

Deas argues that, regardless of whatever oral misrepresentation its agents may have made, had Plaintiffs read the final quote that was signed, they would have known that they were not

ordering Premium impact-rated windows.  Because the windows received were the exact windows provided for in Quote 1460342, Deas contends that Plaintiffs had no right to rely on oral representations when simply reading the written quote would have shown which windows they were ordering.  This argument ignores the fact that, under Mississippi law, "[t]here is a distinction between the case of an individual who imprudently executes a contract without reading it, and of one who signs a contract in reliance upon fraudulent misrepresentations as to its contents." *Johnson v. Brewer*, 427 So.2d 118, 124 (quoting *White v. Union Producing Co.*, 140 F.2d 176, 178 (5th Cir. 1944)).

Plaintiffs' evidence shows that, in the beginning of the negotiations, Deas quoted Premium windows, with Plaintiffs under the impression that these windows would be impact-rated and would look like the provided window sample.  After providing Plaintiffs with four previous quotes for Premium windows and without alerting Plaintiffs to the change to the new window series or that the previous quotes were incorrect, Deas switched to quoting Lifeguard windows instead of Premium. (*See* Roberts Depo. [216-4] at p. 99:18-24; Dr. Smith Depo. [216-1] at p.93:14-20.))  Without legal precedent establishing that Plaintiffs, as a matter of law, were not reasonable in relying on Deas' previous representations about the windows, the Court finds that this is a question best left to the sound judgment of the trier-of-fact.  As such, summary judgment will not be granted on this element.

As none of the arguments Deas asserts for the dismissal of these claims have merit, the Court will **deny** its Motion for Summary Judgment [183] with respect to Plaintiffs' fraudulent misrepresentation and fraudulent inducement claims.

### E.     Negligent Misrepresentation

Deas' argument for summary judgment on Plaintiffs' negligent misrepresentation is identical to its argument that Plaintiffs did not have a right to rely under their fraudulent misrepresentation

and fraudulent inducement claims.  Summary judgment will **denied** on this argument for the same reasons as stated above.

### F.      Unjust Enrichment

"The doctrine of unjust enrichment . . . applies to situations where there is no legal contract . . . ." *Barriffe v. Estate of Nelson*, 153 So.3d 613, 627-28 (Miss. 2014) (quoting *Dew v. Langford*, 666 So.2d 739, 745 (Miss. 1995)).  Deas and Plaintiffs are in agreement that there is an enforceable contract between them and dispute only the terms of this contract.  As such, it is proper that summary judgment be **granted** as to this claim against Deas, and it shall be **dismissed with prejudice**.

### G.      Breach of Implied Warranty of Merchantability

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Miss. Code Ann. § 75-2-314.  Plaintiffs must prove five elements to recover for a breach of this implied warranty:

> (1) [t]hat a "merchant" sold "goods," and he was a merchant with respect to "goods of that kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff[s] or [their] property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

*Vince v. Broome*, 443 So.2d 23, 26 (Miss. 1983) (citing White and Summers, *Uniform Commercial Code* §9-6 (1980)).  Deas makes only two arguments as to why this claim fails:  (1) the goods were fit for their ordinary purpose as windows and (2) notice was untimely given of the injury.

#### 1.      Fit for Ordinary Purpose

In his declaration, Mark Joseph, who installed the windows for Plaintiffs, stated that the windows were unstable, with the frames on some not strong enough to support the weight of the glass.  (*See* Joseph Declaration [216-39].)  He goes on to state that one of the sashes on the largest

units fell out of its frame and shattered, which caused him to believe that the windows were defective.  (*See id.*)  This statement is enough to show that there is a genuine dispute of fact as to whether the windows were fit for their ordinary use.  Deas' motion will therefore be **denied** under this argument.

### 2.    Untimely Notice

Deas argues that because no notice of the alleged breach was given to it between the discovery of the breach and the meeting at the Smith house two months later, notice was untimely, and it is entitled to summary judgment on this claim as a matter of law as this was an unreasonable delay under Miss. Code Ann. § 75-2-607(3)(a).  To support this argument, Deas cites only an Arkansas Supreme Court opinion from 1968, which dealt with whether goods were rejected within a reasonable time under the implied warranty when payments were subsequently made after the alleged breach.  *See Ingle v. Marked Tree Equip. Co.*, 28 S.W.2d 286, 289-90 (Ark. 1968).  Even if the Court were to accept this as persuasive authority, the facts of the current case are markedly distinguishable.  Under Mississippi law, "[t]he question of reasonableness must be determined from the circumstances in the individual case."  *Peavey Elecs. Corp. v. Baan U.S.A., Inc.*, 10 So.3d 945, 959 (Miss. Ct. App. 2009) (quoting *T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour*, 629 F.2d 338, 359 (5th Cir. 1980)).  Furthermore, "[w]hether the notice requirement has been complied with is a question which is particularly within the province of the jury."  *Indemnity Ins. Co. of N. Am. v. Deere & Co.*, No. 2:11-CV-260-GHD-JMV, 2012 WL 4434718, at *7 (N.D. Miss. Sept. 24, 2012) (quoting *Carter Equip. Co. v. John Deere Indus. Equip. Co.*, 681 F.2d 386, 396 (5th Cir. 1982)).  Therefore, the question of whether two months was a reasonable delay under the specific facts and circumstances of this case is a question best left to the trier-of-fact, and summary judgment will be **denied** on this argument.

**H.      Breach of Implied Warranty of Fitness for a Particular Purpose**

Section 75-2-315 of the Annotated Mississippi Code provides that

> where the seller at the time of contracting has reason to know any particular purpose
> for which the goods are required and that the buyer is relying on the seller's skill or
> judgment to select or furnish suitable goods, there is . . . an implied warranty that the
> goods shall be fit for such purpose.

The official comments to § 75-2-315 state that this implied warranty exists even where the seller did

not specifically know the particular use but "the circumstances are such that the seller has reason

to realize the purpose intended." Miss. Code Ann. § 75-2-315, cmt. 1. The comments go on to state

that a "particular purpose" is one where the "specific use by the buyer . . . is peculiar to the nature

of his business." *Id.* at cmt. 2. "For example, shoes are generally used for the purpose of walking

upon ordinary ground, but a seller may know that a particular pair was selected to be used for

climbing mountains." *Id.*

Here, Deas knew that the windows had to be impact-rated. (*See* Roberts Depo. [216-4] at

p. 95.) They also knew that the house the windows were to be used in was in a hurricane zone. A

reasonable jury, then, could draw the inference that Deas knew that the windows would be used for

the particular purpose protecting the structural integrity of the house. Deas argues that the windows

were used as windows, and as such had no particularized use. Under that argument, mountain-

climbing shoes are used as shoes and have no particularized use. This conclusion, though, is

explicitly rejected by the official comments to § 75-2-315 and must be rejected here.

Deas also contends that an implied warranty cannot change the express terms of a contract.

This argument is premised on the idea that the terms of Quote 1460342 represent the whole of the

contract between Deas and Plaintiffs, on which the Court has already found there to be a genuine

dispute of fact, and Deas points to no authority in support of this argument under Mississippi law.[2] Furthermore, the implied warranty of fitness for a particular purpose does not alter the terms of Quote 1460342. Instead, it provides an implied warranty that the windows being sold are fit for the particularized use Plaintiffs intended, and is based on the idea that Plaintiffs relied on Deas' knowledge of Weather Shield products in purchasing the windows.

Finally, Deas argues that notice under this implied warranty was untimely as well. For the reasons stated above, *see supra* Part II.G.2., the Court finds that this is question properly addressed by the fact-finder. Deas' Motion for Summary Judgment [183] will therefore be **denied** as to this claim.

## I.      Lanham Act Claim

In *Lexmark International, Inc. v. Static Control Components, Inc.*, the Supreme Court outlined two requirements that must be met in order for a claimant to be protected under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): he must fall within the zone of interests of the Act and his injuries must be proximately caused by the defendant's actions. 134 S. Ct. 1377, 1388-91, 188 L.Ed.2d 392 (2014). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. For a plaintiff to show proximate cause, he "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

---

[2]Deas cites only two cases in support of this argument. The first is a Kentucky Supreme Court decision from 1928. *See John S. Noel Co. v. Theobald*, 288 S.W. 1031 (Ky. 1928). The second is a Mississippi Supreme Court case that makes no mention of implied warranties. *See A & F Props., LLC v. Madison Cnty. Bd. of Supervisors*, 933 So.2d 296 (Miss. 2006).

12

Plaintiffs' Lanham Act claim is premised on deceptive statements Deas made to *them* about *Weather Shield's* products, and the reputational injury alleged flows from Plaintiffs' use of these products and the harm that they caused. Plaintiffs cannot show that Deas made any deceptive statement to JCI's potential consumers which caused them to withhold trade from them, which would bring their claims under the purview of the Lanham Act. *See Lexmark*, 134 S. Ct. at 1391. Therefore, Deas' Motion for Summary Judgment [183] will be **granted** as to this claim, and it will be **dismissed with prejudice**.

### J.        Damages for Lost Profits

Deas argues that the testimony of Joan Cravens, owner of JCI, is insufficient to establish JCI's damage claim of lost profits[3] as her calculations are incorrect and are unsupported by any other evidence. Under Mississippi law, lost profits are recoverable as consequential damages in a breach of contract action if certain conditions are met. *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 371 (5th Cir. 2002). Deas does not argue that these conditions are not met, but rather that Joan Cravens' testimony is unreliable and should not be considered.

As the owner of JCI, Joan Cravens is allowed to testify to her opinions as to lost profits as these opinions are "rationally based on [her] perception." *See* Fed. R. Evid. 701. The Court does not "make credibility determinations or weigh the evidence" when deciding a motion for summary judgment. *Deville*, 567 F.3d at 164 (citing *Turner*, 476 F.3d at 343). Whether her opinions are credible and the weight to give them are questions for the fact-finder. The Court will therefore **deny** Deas' motion as to this issue.

---

[3]Deas makes a similar argument for JCI's claim of lost business opportunities. However, as this damage claim is made under Plaintiffs' Lanham Act claim, which has been dismissed, *see supra* Part II.I, the Court need not address it.

### K.      Punitive Damages

Under Mississippi law, punitive damages may be awarded only where defendants "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."  Miss. Code Ann. § 11-1-65 (1)(a).  Furthermore, the Mississippi Supreme Court has held that, where a plaintiff has established that defendant acted in bad faith in breaching a contract, a reasonable jury could find that the breach was malicious in nature so as to justify punitive damages.  *T.C.B. Const. Co., Inc. v. W.C. Fore Trucking, Inc.*, 134 So.3d 701, 705 (Miss. 2013).    Therefore, as Plaintiffs' fraudulent misrepresentation, fraudulent inducement, and breach of good faith and fair dealing claims are still pending against Deas, punitive damages may be appropriate.  The Court will **deny** Deas' motion as to these damages.

### III. WEATHER SHIELD'S MOTION FOR SUMMARY JUDGMENT [189]

### A.      Breach of Contract

Plaintiffs base their breach of contract claim against Weather Shield on their contention that Deas was acting as Weather Shield's agent.  They argue that Deas had apparent authority to act on Weather Shield's behalf.  To succeed on a theory of apparent authority, Plaintiffs must show:  "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1181 (Miss. 1990) (citations omitted).  Furthermore, "the existence of apparent authority hinges upon the acts and representations made by the principal to the third party." *In re Evans*, 460 B.R. 848, 887 (Bankr. S.D. Miss. 2011) (citing *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss. 1987)) *abrogated other grounds by First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427 (5th Cir. 2014).

14

The only acts taken by Weather Shield to which Plaintiffs point to establish apparent authority is it allowing Deas to use its editing system, and Plaintiffs argue that, as a result, the produced quotes had the appearance that Weather Shield was the author.  First, the Court would note that this act by Weather Shield was for the benefit of Deas, not Plaintiffs, and cannot be the basis for a finding of apparent authority.  Even if it could, each quote is either printed on Deas letterhead, (*see, e.g.,* Quote 53 [189-2]), or clearly states that Weather Shield is selling and shipping to Deas. (*See, e.g.,* Quote 1460342 [189-13].)  Nothing about these quotes suggest that Weather Shield is making any representation to Plaintiffs or that it is giving Deas any authority to act on its behalf. As such, Plaintiffs' claim of agency fails.

Since the only contract is between Deas and Plaintiffs, Weather Shield's Motion for Summary Judgment [189] must be **granted** on Plaintiff's breach of contract claim against it, and this claim will be **dismissed with prejudice**.

### B.      Breach of Good Faith and Fair Dealing

A breach of good faith and fair dealing claim first requires a valid contract and a breach. *Daniels v. Parker & Assocs., Inc.*, 99 So.3d 797, 801 (Miss. Ct. App. 2012).  As the Court has found that there is no contract between Weather Shield and Plaintiffs, Weather Shield's motion will be **granted** as to this claim as well, and it will be **dismissed with prejudice**.

### C.      Fraudulent Misrepresentation, Fraudulent Inducement, and Negligent Misrepresentation

The first element of Plaintiffs' claims of fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation, calls for either a representation or, in the case of negligent misrepresentation, an omission.  *See Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94, 100 (Miss. 2008) (listing elements of fraudulent misrepresentation); *Lacy v. Morrison*, 906 So.2d

126, 129 (Miss. 2004) (listing elements of fraudulent inducement); *Spragins v. Sunburst Bank*, 605 So.2d 777, 780 (Miss. 1992) (listing elements of negligent misrepresentation). The only representations or omissions Plaintiffs cite are attributable to Deas or its agents, *not* Weather Shield. As the Court has already found that Plaintiffs have not met their burden in establishing that Deas was acting as an agent of Weather Shield, the Motion for Summary Judgment [189] will be **granted** with respect to these claims against Weather Shield, and they will be **dismissed with prejudice**.

> ### D.     Unjust Enrichment

"The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Hans v. Hans*, 482 So.2d 1117, 1122 (Miss. 1986). Under an unjust enrichment theory of recovery, the measure of recovery "is that to which the claimant is equitably entitled." *Estate of Johnson v. Adkins*, 513 So.2d 922, 926 (Miss. 1987) (citations omitted). Unjust enrichment is defined as "[m]oney paid to another by *mistake* of fact, although such *mistake* may have been caused by payor's negligence." *Willis v. Rehab Solutions, PLLC*, 82 So.3d 583, 588 (Miss. 2012) (citations omitted).

Plaintiffs admittedly paid no money directly to Weather Shield. (*See* Cravens Depo. [189-6] at pp. 411-12.) Deas took possession of Plaintiffs' money and then converted it to its own use to pay Weather Shield, its supplier. Therefore, an unjust enrichment claim against Weather Shield cannot go forward because Weather Shield was never in possession of Plaintiffs' money. Weather Shield's Motion for Summary Judgment [189] will be **granted** as to this claim, and it will be **dismissed with prejudice**.

> ### E.     Breach of Implied Warranty of Merchantability

Plaintiffs bring a breach of implied warranty of merchantability claim against Weather Shield under Miss. Code Ann. § 75-2-314.  The Mississippi Supreme Court has held that a manufacturer is a "seller" under the Uniform Commercial Code even where the buyer did not buy directly from it, and is therefore liable on both express and implied warranties.  *Hargett v. Midas Intern. Corp.*, 508 So.2d 663, 664 (Miss. 1987) (citing *Volkswagon of Am., Inc. v. Novak*, 418 So.2d 801, 804 (Miss. 1982)).  Because the Court has already held that Plaintiffs' have adduced enough evidence to survive summary judgment on their breach of implied warranty of merchantability claim, *see supra* Part.II.G, Weather Shield's motion will be **denied** as to this claim.

### F.    Breach of Implied Warranty for a Particular Purpose

Section 75-2-315 of the Annotated Mississippi Code provides that

> where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

As stated above, a manufacturer can be liable on an implied warranty.  *Hargett*, 508 So.2d at 664 (citing *Novak*, 418 So.2d at 804).  The Court has already held that Plaintiffs' have established a case against Deas for breach of the implied warranty for a particular purpose.  *See supra* Part II.H.  This determination, though, was based on Deas' knowledge that the windows had to be impact-rated and knowledge of the location of the house.  *See id.*  The question now is whether Weather Shield had the requisite knowledge.

Plaintiffs have pointed to no piece of evidence showing that they ever communicated their desire for impact-rated windows *directly* to Weather Shield.  The only evidence Plaintiffs have adduced supports Deas knowledge, not Weather Shield's.  (*See* Deas Depo. [216-3] at p. 104; Roberts Depo. [216-4] at pp. 95-96.)  Furthermore, Plaintiffs admit that they had no conversations

17

with anyone from Weather Shield.  (*See* Dr. Smith Depo. [216-1] at pp.179-80; Mrs. Smith Depo. [216-3] at pp. 51-52; Cravens Depo. [216-6] at p. 210.)  It is not established by the record, then, that Weather Shield had any reason to know of the particular purpose for which its windows would be used.  Without this knowledge, it can not be liable for a breach of the implied warranty for a particular purpose.  Weather Shield's Motion for Summary Judgment [189] will therefore be **granted** as to this claim, and it will be **dismissed with prejudice**.

### F.     Lanham Act Claim

As discussed previously, *see supra* Part II.I, Plaintiffs' injuries are not within the purview of the Lanham Act.  Therefore, Weather Shield's motion will be **granted** as to this claim as well, and it will be **dismissed with prejudice**.

### G.     Punitive Damages

Under Mississippi law, punitive damages may be awarded only where defendants "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."  Miss. Code Ann. § 11-1-65 (1)(a).  The only claim which remains pending against Weather Shield is Plaintiffs' claim for breach of the implied warranty of merchantability.  Plaintiffs have not pointed to any evidence in the record that could establish that this breach was done maliciously, with gross negligence, or committed through fraud.  They will not, then, be able to recover punitive damages from Weather Shield, and the Motion for Summary Judgment [189] shall be **granted** as to this issue.

### IV.  MOTIONS TO EXCLUDE [186][192][194][196]

The motions to exclude [186][192][194][196] before the Court challenge the admissibility of expert testimony and opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993).

18

The admissibility of expert testimony is governed by F.R.E. 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has explained that this rule places the district court into a gatekeeping role in order to ensure that scientific evidence is both reliable and relevant. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 597, 113 S. Ct. 2786). As explained by the Fifth Circuit,

This role requires the district judge to undertake a two-part analysis. The district judge must first determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. Second, the district judge must determine whether that reasoning or methodology can be properly applied to the facts in issues; that is, whether it is relevant.

*Id.* (citing *Daubert*, 509 U.S. at 592-93, 113 S. Ct. 2786).

A.     **Motion to Exclude Grimes [186]**

1.     **Testimony Regarding Defects and Warranties**

Defendants[4] first argue that the testimony of Darius Grimes ("Grimes") regarding defects and warranties of the windows should be excluded, citing the Mississippi Products Liability Act and the fact that Grimes did not analyze the limited express warranty or the final quote. However, no

---

[4]This motion was originally filed by Weather Shield, but Deas later joined in the motion with their Joinder [188].

products liability or express warranty claim has been brought.  As far as the Court can tell, Defendants are objecting to Grimes' use of the words "defects" and "defective" in his report and assumes they are arguing that these words make the opinions irrelevant because no products liability claim has been brought.  The Court does not find this argument to be persuasive and will not grant Defendants' motion on this basis.

### 2.     Grimes' Qualifications

Defendants claim that there is nothing in Grimes CV or background that suggest he is qualified to testify as the design or manufacturing of windows, stating that "his CV suggests he is a building inspector and has knowledge regarding code enforcements, and he was retained to assist Plaintiffs in meeting the fortified home standards."  (Memo. in Support [187] at p. 17.)  A perusal of his CV and the Background section of his report, though, shows an extensive history in the construction industry, which includes work with windows and other fenestration products.  (*See* Grimes CV [186-3]; Grimes Report [186-4] at ¶¶ 1-21.)  The Court finds that he is qualified under F.R.E. 702 to offer an opinion based on this experience as to the suitability of the windows to the project.  As such, the motion will not be granted under this argument.

### 3.     Reliability

Defendants argue that Grimes' methodology is flawed because he did no ASTM or AAMA testing to determine if there was a design or manufacturing defect, because he did not address whether the windows delivered deviated from those in the final accepted quote, and because he performed his testing on uninstalled windows and accepts as fact Plaintiffs' testimony that the windows were properly installed.

The test that Defendants point to as unreliable is the "sash drift" test Grimes used to evaluate whether the sashes of the window would stay in place after being unlocked, which he found they did

not. (*See* Grimes Report [186-4] at ¶ 59.)  Grimes then opines in his report the likely cause of this failure. (*See id.*)  Furthermore, though Defendants are correct in their assertion that their failure to do any ASTM or AAMA testing does not mean that a defect existed, the claim against them, particularly Deas, is that such testing was required for the particular purpose Plaintiffs intended to use the windows.  As such, Grimes failure to subject the windows to this testing is irrelevant.

Defendants have not suggested that another methodology of testing sash drifts exists, nor have they shown how these sash drifts would have been different had the window been installed. Additionally, whether the windows deviated from the final accepted quote or whether Plaintiffs' testimony should have been relied upon are factual issues that are best left for cross-examination. *See Daubert*, 509 U.S. at 596, 113 S. Ct. 2786 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence.").  Therefore, the Court will not exclude Grimes as an expert based on his reliability.

### 4.    Opinions Regarding Misrepresentations and Quoting Process

Defendants object to Grimes testimony and opinions dealing with previous quotes other than Quote 1460342, arguing that they are irrelevant and inadmissible under F.R.E. 401 and 402, that they are impermissible legal conclusions, and that they are more prejudicial than probative under F.R.E. 403.

In the portions of his report discussing the previous quotes, Grimes goes over the language used and what such language would normally mean in the construction industry.  (*See* Grimes Report [186-4] at ¶¶ 75-90.)  Though it is true that Plaintiffs' claims of fraudulent inducement and misrepresentation are premised on what they actually believed and relied upon, Grimes' testimony as to this language is at least relevant to Defendants' intent and the reasonableness of Plaintiffs'

reliance.  Though Defendants claim that these opinions are "merely legal argument disguised as expert opinions," they give no basis for this contention.  (*See* Memo. in Support [187] at p. 21.) Nothing in Grimes' report suggests that he is giving an opinion as to a legal ruling that the Court must make nor does he address any legal precedent.[5]  Finally, though Defendants argue that the prejudicial value of these opinions substantially outweigh their probative value to justify exclusion under F.R.E. 403, they give nothing to support this assertion but conclusory statements that the evidence will be cumulative or that the jury might give the expert more weight.

Because the Court ultimately finds none of Defendants' arguments persuasive, their Motion to Exclude Grimes [186] will be **denied**.

### B.      Motion to Exclude Fritche [192]

Plaintiffs argue that Patricia J. Fritche ("Fritche") and her report must be excluded as her opinions are neither relevant nor reliable.  They further contend that allowing her to testify would mislead and confuse the jury and should be excluded under F.R.E. 403.

F.R.E. 702 requires that an expert have specialized knowledge, to rely on sufficient facts, to use reliable methods, and to reliably apply those methods.  Fritche's specialized knowledge is in forensic accounting.  However, she does not use this specialized knowledge in forming her conclusions.  Her methodology consists only of examining the evidence to understand the meaning of certain terminology and to determine if there is sufficient documentation to support Plaintiffs'

---

[5]The only portion of the report which gives the Court pause as to whether Grimes is purporting to give a legal opinion is found in Paragraph 89, where he states that "[t]his practice became so rampant in Florida that the legislature passed a law in 2011 making it a violation of the Florida Unfair and Deceptive Trade Practices Act."  (Grimes Report [186-4] at ¶ 89.) However, in the context, it is clear that Grimes is giving background on where the language has been used to mislead before and the remedies that have been put into place because of it.  The Court does not find that this is a proper basis for exclusion.

damages claims.  (*See* Fritche Report [193-2] at p. 2.)  This type of methodology does not require accounting knowledge, and the jury can readily examine the evidence without her expert testimony. The only task she reports to have performed that may require accounting expertise is her claim that she "[p]erformed a recalculation of said amounts, if possible, for the requested damages."  (*See* Fritche Report [193-2] at p. 2.)  This recalculation, though, is not described in the report in any detail, and it is impossible to know whether she used reliable accounting methods and applied reliably as required by F.R.E. 702(c) and (d).[6]  Finally, her "analysis of contract for basis of twelve month completion time line" is clearly a legal analysis and is inadmissible.  *See United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999) (citing *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).  Fritche's testimony and report, then, must be excluded under F.R.E. 702.

Even if Fritche was not excluded under F.R.E. 702, she would be excluded under F.R.E. 403. As the Supreme Court pointed out in *Daubert*, "expert evidence can be powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."  509 U.S. at 595, 113 S. Ct. 2786 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).  Because of the powerful nature of expert testimony, Fritche's opinions could prejudice Plaintiffs by confusing and misleading the jury into accepting her opinions that there is insufficient evidence without judging the evidence for themselves.  This danger substantially outweighs the

---

[6]It is worth noting that Fritche's report is only four pages long and includes no calculations, stating that "Plaintiffs have not provided sufficient reliable data nor [sic] support for the damages in the documents received to apply a method to recalculate."  (Fritche Report [193-2] at p. 3.)

probative value of Fritche's testimony, as whatever insufficiencies exist in Plaintiffs' claims for damages can be pointed out more through cross-examination.

Therefore, because Fritche's report and testimony are found to be inadmissible under F.R.E. 702 and 403, the Court will **grant** the Motion to Exclude Fritche [192].

C.      **Motion to Exclude Connell [194]**

Plaintiffs argue that Lee R. Connell ("Connell") should be excluded because his expert testimony is not relevant, not reliable, and contains impermissible legal analysis of the contract between JCI and the Smiths.  They also contend that his testimony will confuse the issues of the case and is inadmissible under F.R.E. 403.

Connell's report details the process of procuring the windows and analyzes this process by applying industry standards.  This analysis is relevant to whether Plaintiffs had the right to rely on the representations of Deas throughout the procurement process, which is an element of their fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation claims.  This analysis is also reliable as it is done using standards recognized by the American Institute of Architects.  Furthermore, rather than rewriting or interpreting the contract between the Smiths and JCI, Connell uses industry standards to describe their relationship and duties "[i]n the absence of [a] detailed description defining the duties and responsibilities of the parties." (Connell Report [195-2] at p. 8.)

Plaintiffs further argue that Connell's testimony should be excluded under F.R.E. 403 because it will confuse the issues for the jury as only Defendants' conduct is at issue, not Denmark or Plaintiffs.  However, not only is the reasonableness of Plaintiffs' reliance on Defendants' representations an issue, but a comparative fault defense has also been asserted, which places

24

Plaintiffs' and Denmark's conduct within the issues that the jury must decide.  Connell's testimony will therefore not confuse the issues and is not inadmissible under F.R.E. 403.

Plaintiffs also contend that portions of Connell's testimony and report should be stricken if they are not excluded entirely.  Specifically, they wish to exclude Connell's opinion addressing the duties and responsibilities JCI had to the Smiths under the industry standards and his opinion addressing Plaintiffs' reliance on verbal representations.  As stated above, both of these opinions are relevant and reliable under F.R.E. 702, and are squarely within the issues to be decided and therefore not confusing under F.R.E. 403.  These portions of the report are admissible and Connell's testimony will not be limited based on Plaintiffs' arguments.  Plaintiffs will be free to address the weaknesses of these opinions on cross-examination.

Because the Court finds Connell's testimony and report to be relevant and reliable and because they do not confuse the issues, the Motion to Exclude Connell [194] will be **denied**.

### D.       Motion to Exclude Smith [196]

Plaintiffs argue that William D. Smith's ("Smith") testimony and report are unreliable because they are based on insufficient facts as required by F.R.E. 702(b).  They contend that Smith assumed that certain documents were given to Plaintiffs during the transaction when the undisputed evidence shows that they were not, and they also argue that many of his opinions are speculative in nature as a result.  Because of the fact-intensive nature of this inquiry, the Court finds that a hearing is necessary to determine which documents Smith relied on in forming his opinion and what assumptions were made.  A ruling as to this argument will be **deferred** until this hearing can be held.

Plaintiffs also argue that, because he has been inactive as a general contractor for over twenty-five years, Smith should not be permitted to opine as to construction administration and the

submittal process.[7]  They do not, however, show how this period of inactivity makes the knowledge and methods he employed unreliable.  The Motion to Exclude Smith [196] will therefore be **denied** as to this argument.

## V.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Deas' Motion for Summary Judgment [183] is **granted in part** and **denied in part**.

It is **granted** in that Plaintiffs' unjust enrichment claim and Lanham Act claim against Deas are **dismissed with prejudice**.

It is **denied** in that the following claims remain pending against Deas: (i) breach of contract, (ii) breach of good faith and fair dealing, (iii) fraudulent misrepresentation, (iv) fraudulent inducement, (v) negligent misrepresentation, (vi) breach of implied warranty of merchantability, (vii) breach of implied warranty of fitness for a particular purpose, and (vii) punitive damages.

IT IS FURTHER ORDERED AND ADJUDGED that Weather Shield's Motion for Summary Judgment [189] is **granted in part** and **denied in part**.

It is **granted** in that the following claims are **dismissed with prejudice**: (i) breach of contract, (ii) breach of good faith and fair dealing, (iii) fraudulent misrepresentation, (iv) fraudulent inducement, (v) negligent misrepresentation, (vi) breach of implied warranty of fitness for a particular purpose, (vii) violation of the Lanham Act, and (vii) punitive damages.

It is **denied** in that Plaintiffs' claim for breach of the implied warranty of merchantability against Weather Shield remains pending.

---

[7]Plaintiffs also contend that Smith's testimony as to this would be cumulative of Connell's testimony.  However, as this argument was only made in Plaintiffs' reply brief, it will not be considered.

26

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' Motion to Exclude Grimes [186] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' Motion to Exclude Fritche [192] is **granted**.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' Motion to Exclude Connell [194] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' Motion to Exclude Smith [196] is **denied in part** and **deferred in part**.

It is **denied** as to the argument that Smith's inactivity as a general contractor for twenty-five years makes his opinion unreliable.

It is **deferred** for a hearing as to whether Smith's opinions were based on sufficient facts. Defendants are advised that their expert should be available to testify at this hearing.

SO ORDERED AND ADJUDGED this the 30th day of November, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE